# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 19-11650-MER |
| Skin PC | ) | Chapter 11 |
| Tax ID / EIN: 46-5652384 | ) | |
| | ) | |
| _____Debtor._____ | ) | _____ |
| In re: | ) | |
| | ) | Case No. 19-11659-MER |
| Lake Loveland Dermatology, P.C. | ) | Chapter 11 |
| Tax ID/EIN: 84-0825679 | ) | |
| | ) | |
| _____Debtor._____ | ) | _____ |
| In re: | ) | |
| | ) | Case No. 19-11647-MER |
| KEVIN JOHN MOTT | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | **Joint Administration Under** |
| | ) | **Case No. 19-11650-MER** |

## OBJECTION TO MOTION TO RECONSIDER PURSUANT TO RULES 7052 AND 9023, OR, IN THE ALTERNATIVE, TO CLARIFY ORDER

790 Eisenhower, LLC ("**Eisenhower**"), by and through its undersigned counsel, hereby submits this objection to the Motion to Reconsider Pursuant to Rules 7052 and 9023, or, in the Alternative, to Clarify Order ("**Motion to Reconsider**") filed at Docket No. 188 by debtor-in-possession Lake Loveland Dermatology ("**LLD**"). In opposition to the Motion to Reconsider, Eisenhower respectfully states as follows:

## INTRODUCTION

This Court awarded immediate possession of the subject Loveland Premises to Eisenhower pursuant to 11 U.S.C. § 365(d)(4). Through the Motion to Reconsider, LLD seeks reconsideration or clarification as to what "immediate" means under Section 365(d)(4) – the identical issue for which LLD seeks appellate review of the same Order. The argument of irreparable harm to patients is a litigation maneuver to bolster the inevitable request for a stay pending appeal of this same issue, designed to buy more time to surrender the premises to Eisenhower. LLD's procedural tactics have resulted in significant delays in turning over possession of the Loveland Premises to Eisenhower in violation of the Bankruptcy Code.

Eisenhower has already provided a reasonable timeframe for LLD to comply with the Order and surrender possession, having agreed to allow LLD to remain in possession of the Loveland Premises through December 31, 2019 – an additional 48 days after the Order was entered. In light of the representations by affidavit as to those previously scheduled Mohs surgeries through January 16, 2020, and to avoid the alleged irreparable harm to patients and putting this Court in the untenable position of allegedly endangering the welfare of a select few patients, Eisenhower would agree to another extension of the surrender date through and including January 31, 2020 so long as rent and other post-petition obligations are satisfied. In total, LLD will have then enjoyed the post-petition benefit of possession for 329 days without assuming the 2016 Lease. That timeframe for surrender of the Loveland Premises is more than reasonable and certainly provides ample and adequate time for LLD to "immediately surrender" the premises.

However, LLD's request for an additional six months of possession is not what is contemplated under Section 365(d)(4). In short, LLD has initiated an appeal and filed the Motion to Reconsider to delay immediate surrender of the Loveland Premises. Eisenhower

objects to extending the surrender date for the Loveland Premises after January 31, 2020.

As set forth herein, the Motion to Reconsider should be denied to allow Eisenhower to regain immediate possession of the Loveland Premises by no later than January 31, 2020, the explicit statutory remedy under the Bankruptcy Code.

## ARGUMENT

On June 1, 2016, LLD as tenant, and Eisenhower as landlord and owner, entered into a Lease Agreement ("**2016 Lease**") for certain nonresidential real property known by street address as 776 W. Eisenhower Boulevard, Loveland, Colorado 80537 ("**Loveland Premises**"). LLD did not assume the 2016 Lease within the extended 210-day deadline of October 7, 2019. LLD's choice to not assume the 2016 Lease resulted in the 2016 Lease being "deemed rejected" and Eisenhower obtaining a Court order for "immediate possession" of the Loveland Premises:

> As mandated by § 365(d)(4), because the 2016 Lease has been deemed rejected, the Debtor "shall immediately surrender that nonresidential real property to the [Landlord]." 11 U.S.C. § 365(d)(4)(A). *The Court finds the language of this statute clear and unequivocal as to what is required from the Debtor now*, and pursuant to § 105(a) the Court may enter such orders necessary to effectuate the provisions of the Code.

Order, at p. 7 [Docket No. 176] (emphasis added).

LLD seeks reconsideration of the term "immediate" under Section 365(d)(4) under F.R.C.P. 59(e) as incorporated by F.R.B.P. 9023 or clarification of the term "immediate" under F.R.C.P. 52(b) as incorporated by F.R.B.P. 7052 and 9014(c). Relief under Rule 52(b) is improper because, as the Court noted, Section 365(d)(4)(A) of the Bankruptcy Code is "clear and unequivocal." There is nothing to clarify, particularly in light of the additional 79 days Eisenhower has consented to for LLD to surrender the Loveland Premises by January 31, 2020.

LLD states it "fully intends to comply with the Order" but asks this Court to determine what "immediate" surrender means. Creating a delay in surrender through motions practice, LLD is asking this Court reconsider and establish an extended time period for surrender of the

{Z0298118/2 }

Loveland Premises by arguing "immediate" equates to six months from entry of the Order. "Grounds warranting a motion to reconsider [under Rule 59(e)] include . . . the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). There was no error in the Order, and LLD does not identify any error in awarding immediate surrender of the Loveland Premises nor does LLD challenge that ruling. To be clear, LLD's latest argument boils down to whether this Court should intervene to prevent manifest injustice and set a firm date for immediate surrender.

LLD should *already* be transitioning patients, patient records and equipment, rescheduling existing procedures, treatments and surgeries, and ceasing to schedule new procedures, treatments and surgeries at the Loveland Premises. The post-hearing factual addendum through affidavit and citation to state law regulations governing the closing of a practice are misleading. LLD is not ceasing its operations. LLD has assumed three other leases to continue its operations, and its parent company, Skin, P.C. provides identical services to those provided by LLD at the Loveland Premises.

Rule 59(e) motions are appropriate where a court has misapprehended the facts, a party's position, or controlling law. *See Paraclete*, 204 F.3d at 1012. However, a Rule 59(e) motion "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)). The Motion to Reconsider improperly raises new arguments that could have been raised in its previous response to Eisenhower's motion for immediate surrender, while remaining notably silent on any efforts LLD has taken to comply with the Order, including notifying its patients and transferring files, equipment and services to any of the other three facilities where LLD is operating. LLD's failure to plan for the immediate surrender of the Loveland Premises

{Z0298118/2}

following its failure to assume the 2016 Lease within the first 210 days of this case should not sway this Court into an impermissible and indeterminable extension of time to surrender the same.

Further, LLD is not a nursing home or hospital with any overnight patients in critical condition.  The office operations close at 5:00 pm each day, with the vast majority of skin and dermatology related procedures and treatments addressing non-critical patient care, with the exceptions of melanoma treatments for skin cancer and Mohs surgery.  LLD generally points to Mohs surgeries scheduled between January 6, 2019 through January 16, 2019 without identifying precisely how many surgeries are scheduled in that time frame.  LLD exaggerates the difficulty in complying with the Order with a blanket statement: "LLD would have to cancel 100% of scheduled Mohs surgeries[.]"  Motion to Reconsider, Affidavit at ¶ 30.  This is a blatant attempt to overstate the scope of what is entailed in surrendering the Loveland Premises, and in any event, LLD offers no good reason why operations need to continue after these surgeries are completed, let alone for an additional six months, other than for LLD's convenience in failing to prepare for the outcome of immediate surrender.

LLD also fails to describe any efforts made to reschedule patient care at any of the other three LLD facilities, other than to state Mohs surgery cannot be performed at a satellite LLD facility.  This position also ignores that Skin, P.C. (LLD's parent company) provides the identical Mohs surgeries and skin cancer procedures at its clinic in Boulder, Colorado.  *See* http://www.idealdermatology.com/.  Again, LLD fails to provide any information on what efforts were made to move "100%" of the scheduled Mohs surgeries" from LLD to Skin or any other dermatology clinic.

Moreover, this is not a scenario where LLD is closing its doors, needs to move full time resident patients, or has no options to offload files, equipment and patients to other care facilities

{Z0298118/2 }

related to and controlled by Dr. Mott. Indeed, the state law compliance issues raised by LLD are not implicated. The guidelines cited in the Motion to Reconsider address discharging patients, releasing patient records, and departure from a medical practice in instances where a provider is shutting down and ceasing operations to provide care. LLD has three other operating facilities and Skin has an operating facility. There are obvious destinations to relocate patients, patient records and equipment to another LLD facility, patient care can be provided by LLD at those alternative facilities or at the Skin facility, and patient can remain under the care of LLD or its parent company. LLD's suggestion that this Court would be complacent in compromising patient care for overriding state regulations is a red herring.

Further, none of the cases cited by LLD interpreting "immediate" addressed that term in the context of 11 U.S.C. § 365(d)(4)(A). To any extent that the term "immediate" in this statutory provision is ambiguous, the legislative history evinces the Congressional intent that landlords receive timely relief. "In dealing with these problems under subsections 365(d)(3) and (d)(4), the courts have often resorted to legislative history." 1 COLLIER REAL ESTATE TRANS & BANKRUPTCY CODE P 3.01 (2019). Congress intended to absolutely remove the judge's discretion to extend the period for rejecting a lease:

> The revisions to section 365(d)(4) were contained in section 404 of the 2005 Act. The legislative history of the revised provision appears clearly to indicate that Congress intended to eliminate any judicial discretion to extend the outside period beyond 210 days:
>
>> Subsection (a) of section 404 of the Act amends section 365(d)(4) of the Bankruptcy Code to establish a firm, bright line deadline by which an unexpired lease of nonresidential real property must be assumed or rejected. If such lease is not assumed or rejected by such deadline, then such lease shall be deemed rejected, and the trustee shall immediately surrender such property to the lessor. . . .
>>
>> This provision is designed to remove the bankruptcy judge's discretion to grant extensions of the time for the retail debtor to decide whether to assume or reject a lease after a maximum possible period of 210 days from the time of entry of the order of relief. Beyond that maximum period, the judge has no authority to

> grant further time unless the lessor has agreed in writing to the extension.

1 COLLIER REAL ESTATE TRANS & BANKRUPTCY CODE P 3.01 (2019) (quoting H.R. Rep. No. 109-31, 109th Cong., 1st Sess. (2005), reprinted in Vol. E-2 COLLIER ON BANKRUPTCY, App. Pt. 10(b) (Matthew Bender 16th ed.)).

The "immediate surrender" provision is not tempered by concerns about effects on the estate. In addressing the provision that "trustee shall immediately surrender … [the] nonresidential real property to the lessor," Collier's notes that:

> The apparent purpose of this provision is to afford landlords the full measure of relief mandated by the policy of expeditious disposition of nonresidential real estate leases and to dispel any notion that the trustee could retain possession of the premises to the extent necessary to protect and preserve the other assets of the estate.

1 COLLIER REAL ESTATE TRANS & BANKRUPTCY CODE P 3.01 (2019). This language strongly supports Congressional intent that immediate surrender is mandatory and equitable considerations or a case-by-case approach (and certainly post-ruling on reconsideration) is improper under Section 365(d)(4)(A). Delving into a post-ruling case-by-case factual analysis of awards for immediate possession is improper and would allow debtors to circumvent the clear landlord protections codified in the Bankruptcy Code:

> [A]fter a lease is deemed rejected under section 365(d)(4), the trustee or debtor in possession must "immediately surrender" the leased property to the lessor. 11 U.S.C. § 365(d)(4). Surrender of property, whether its use is for a retail store in a mall or a clam harvesting operation in the tidelands, has the effect of terminating the enterprise that operates there. If Congress intended passive rejection of a lease to be subject to court approval, it would not have required the drastic step of immediate surrender.

*Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080-81 (9th Cir. 1989); 1 COLLIER REAL ESTATE TRANS & BANKRUPTCY CODE P 3.01 (2019) (""In some cases, an automatic rejection of a lease under section 365(d)(4), arising from the debtor-tenant's failure to act timely in bankruptcy court, may result in the loss of the debtor's leasehold and only place of business.").

The relief requested is improper and violates the clear intent and explicit statutory remedy provided for by Congress. In light of the Affidavit and the scheduled Mohs surgeries, a 79-day period after entry of the Order for LLD to surrender the Loveland Premises is reasonable and more than "immediate". The primary nature of care for LLD's patients is elective dermatology services, not life threatening emergency surgery, a point glossed over and minimized in the Motion to Reconsider and attached Affidavit. An extension beyond January 31, 2020 is not "immediate" and would serve to circumvent this Court's Order and § 365(d)(4)(A). LLD is continuing its operations and patient care, but not at the Loveland Premises. LLD assumed three other leases for dermatology related patient care across Colorado and can transfer patients, files and equipment to one of those alternative locations or to Skin, P.C., which provides identical services, without disrupting or compromising patient care. LLD is *not* closing its doors and ceasing operations such that patient care is endangered. Thus, should this Court desire to define the term "immediate" under § 365(d)(4)(A), Eisenhower would not dispute that the additional 79-day period through January 31, 2020 is ample for LLD to comply with surrender of the Loveland Premises.

## CONCLUSION

LLD's Motion to Reconsider is without merit. LLD should have already provided notice to its patients and rescheduled patient procedures, treatments and care to any of its other three locations or to its parent company facility. LLD should have already begun to disassemble equipment and organize patient files for moving. LLD has provided no information on its efforts to surrender possession. Instead, LLD asks the Court to extend the timeframe for surrender for six months from entry of the Order and allow LLD to continue operations under a rejected lease in contravention of the clear mandates of the Bankruptcy Code. Therefore, the Motion to Reconsider should be denied and no extension of the surrender of the Loveland

Premises should be considered beyond January 31, 2020.

WHEREFORE, Eisenhower respectfully requests that the Court enter an order denying the Motion to Reconsider, and for such other and further relief the Court deems proper.

| Dated: December 17, 2019 | MARKUS WILLIAMS YOUNG & HUNSICKER LLC |
|---|---|
| | */s/Matthew T. Faga* |
| | Matthew T. Faga, Reg. No. 41132 |
| | Jennifer M. Salisbury, Reg. No. 37168 |
| | 1700 Lincoln Street, Suite 4500 |
| | Denver, CO   80203 |
| | Phone Number: (303) 318-0120 |
| | mfaga@markuswilliams.com |
| | jsalisbury@markuswilliams.com |
| | COUNSEL FOR 790 EISENHOWER, LLC |

{Z0298118/2 }

## CERTIFICATE OF SERVICE

I certify that on December 17, 2019, a true and correct copy of the foregoing **OBJECTION TO MOTION TO RECONSIDER PURSUANT TO RULES 7052 AND 9023, OR, IN THE ALTERNATIVE, TO CLARIFY ORDER** was filed and served via CM/ECF pursuant to L.B.R. 9036-1 or regular U.S. Mail as indicated below, on the parties listed below:

**Via CM/ECF** Douglas W. Brown
dbrown@bbdfirm.com

Neal K. Dunning
ndunning@bbdfirm.com

Jordan D. Factor
jfactor@allen-vellone.com

Lance J. Goff
lance@goff-law.com

Lee M. Kutner
lmk@kutnerlaw.com

Maureen K. McIntee
mm@kutnerlaw.com

Paul Moss
Paul.Moss@usdoj.gov

Keith C. Owens
kowens@venable.com

Keri L. Riley
klr@kutnerlaw.com

Jennifer M. Salisbury
jsalisbury@markuswilliams.com

Jeffrey Weinman
jweinmantrustee@outlook.com

Frank W. Visciano
fvisciano@sennlaw.com

**Via U.S. Mail**
Lake Loveland Dermatology, P.C.
776 West Eisenhower Blvd.
Loveland, CO   80537

Skin PC

905 Alpine
Boulder, CO 80304

Kevin John Mott
9626 Mountain Ridge Drive
Boulder, CO 80302-9369

*/s/ Jessica Anderson*
Jessica Anderson, Legal Assistant

{Z0298118/2 }